[S. F. No. 5211.   In Bank.—February 20, 1911.]

In the Matter of the Estate of CHARLES HANSON, Deceased. WILLIAM H. HANSON, and H. C. CHESEBROUGH, Trustee, etc., Appellants, v. WILLIAM H. JORDAN and SAMUEL G. MURPHY, Trustees, etc., Respondents.

TRUST UNDER WILL—DIRECTION FOR TRUSTEE'S COMPENSATION FOR FIXED PERIOD—PROLONGATION OF TRUST.—Under provisions in a will, embodied in the decree distributing the testator's estate, directing that a trust estate shall be held by the trustees "for a period of five years from and after the date of the entry of this decree of distribution," and that the trustees shall receive a fixed annual compensation "during the full term of their trusteeship," the trustees are only entitled to receive the compensation fixed by the will for the period of five years. If by reason of the failure to formally enter the decree of distribution immediately upon its rendition, or for other reasons, the duration of the trust is prolonged, the right of the trustees to compensation for the additional term should rest not upon the terms of the trust, but upon an award of the court in *quantum meruit*.

ID.—ACCOUNTING BY TRUSTEES—ALLOWANCE OF COMPENSATION FOR PERIOD PRIOR TO ENTRY OF DECREE.—The fact that the court, upon the first accounting by the trustees, allowed them the compensation fixed by the will for a period of time intervening between the date of the rendition of the decree, when the trust actually commenced, and the date of the entry of the decree, is not determinative of their right to future compensation.

ID.—PETITION BY ONE TRUSTEE TO TERMINATE TRUST—RESISTANCE BY OTHER TRUSTEES—CHARGES AGAINST TRUST FUND—ATTORNEY'S FEES.—Where a petition by one of three trustees for a termination of the trust is successfully opposed by the others, the action of the re-
CLIX Cal.—26

sisting trustees must be held to have been the successful defense of the trust, and their legitimate and necessary disbursements in this regard, such as attorney's fees, are chargeable against the trust property.

APPEALS from an order of the Superior Court of the City and County of San Francisco making certain allowances to trustees under a will. J. V. Coffey, Judge.

The facts are stated in the opinion of the court.

Bourdette & Bacon, for Appellants.

Charles S. Wheeler, J. F. Bowie, and R. H. Lloyd, for Respondents.

HENSHAW, J.—These are appeals taken from the order of court making certain allowances to William H. Jordan and S. G. Murphy, trustees under the will of Charles Hanson, deceased. The appellants are W. H. Hanson, the sole beneficiary of the trust, and the third trustee, H. C. Chesebrough.

By his will, duly admitted to probate, Charles Hanson nominated H. C. Chesebrough and S. G. Murphy executors. They qualified and acted. Their attorney was William H. Jordan. By the will the following trust was declared:—

"Ninth: I hereby give and bequeath to H. C. Chesebrough of Oakland, Samuel G. Murphy and William H. Jordan of San Francisco, all the interest which I may possess at the date of my death in and to the capital stock of the said Tacoma Mill Company, after the payment of all my just debts, funeral expenses and the foregoing legacies, the same to be held by them in trust for the period of five (5) years from and after the date of the entry of this decree of distribution of my estate, or until the death of my son, William H. Hanson, should he die prior to that time."

Of the beneficiaries and purposes of the trust no more need be said than that it is conceded that the trust has been executed, and that appellant William H. Hanson is the sole beneficiary thereof, and is now entitled to the full ownership of the trust property, relieved from the trust. By codicil, the compensation of the trustees was provided for in the following language: "To H. C. Chesebrough, Samuel G. Murphy,

and to William H. Jordan, the sum of six thousand ($6,000) dollars per annum during the full term of their trusteeship, and that said sum of money shall be so paid to each of said trustees in equal monthly installments." It is to be noted that two of the trustees were the executors of the estate, and that the third trustee is the attorney for the executors. On the fifth day of February, 1903, a decree of distribution was made and given in the superior court, by which the executors were ordered to distribute to the trustees the property of the trust, which consisted wholly and solely of 3749 shares, of the par value of one hundred dollars each, of the capital stock of the Tacoma Mill Company. Neither the executors nor Mr. Jordan, their attorney, nor the same persons as trustees, caused this decree to be entered until June 23, 1903, notwithstanding which the executors, upon the advice of their attorney, made over the trust property to themselves as trustees upon the fifth day of February, 1903, and proceeded to administer the trust. The decree was actually entered upon June 23, 1903. Upon the eighth day of February, 1904, the trustees filed their first annual account, and on the twenty-third day of February, 1904, the account was settled and allowed and has become final. In this account of February, 1904, the trustees credited themselves, as compensation for their services, with the sum of five hundred dollars each, monthly, beginning with February 5, 1903. Following this, the trustees made no report or account to the court of their dealings with the trust until after the fifth day of February, 1908, when they presented their report and account for the preceding four years, including their claims for fees at the rate of five hundred dollars a month up to February 5, 1908. This account was allowed and settled and has become final. On the twenty-fifth day of June, 1908, William H. Hanson, the sole beneficiary of the trust, filed his petition for an order citing the trustees to render their final account and show cause why the trust should not be terminated and the property distributed to him. The trustees responded, the trustee Chesebrough disclaiming all compensation from February 5, 1908, the other two trustees claiming compensation at the rate fixed by the will from February 5, 1908, till June 23, 1908, the latter date being five years after the decree of distribution was actually entered. The court found the trust to have been terminated on the twenty-third day of June,

1908, and allowed this compensation. The correctness of its ruling in this regard presents the main contention upon this appeal.

Under the trust, Chesebrough had a contingent interest in its property, depending upon the death of William H. Hanson before the termination of the trust. He released and relinquished all this interest to William H. Hanson immediately after the fifth day of February, 1908, and petitioned the court to have the trust terminated. This was opposed by the other trustees, Jordan and Murphy, and an allowance of five hundred dollars is made to Jordan as necessary attorney's fees expended in so resisting Chesebrough's application.

Of the trustees, Mr. Murphy was a banker, who spent no small part of the time of the life of this trust in Europe; Mr. Jordan was an attorney at law, and Mr. Chesebrough was the manager of the Tacoma mill, the stock of which constituted the trust property. This property was delivered to and remained entirely in the custody and control of the trustee Chesebrough. He collected the dividends and made the disbursements. At the time of the settlement of the trust, the *corpus* of the trust consisted of this stock and certain moneys by way of accumulated dividends. One of the purposes of the trust was by the testator declared to be his desire that the stock should be preserved in its integrity, and the interests of the Tacoma Mill Company advanced, as a monument to his memory. What was practically done to this end it would seem was done by Mr. Chesebrough. These considerations are adverted to solely for the purpose of showing that the trust was not of such character as to impose any considerable labor upon the trustees, or to call for much or any care by way of its management. Shares of stock of a milling company were delivered to one of the trustees who was the manager of this company, who alone kept it, received the dividends, made the disbursements to the trustees of their monthly compensation, and placed the rest of the money in bank. Under these circumstances, it is quite apparent that the munificent compensation which the will bestowed on the trustees was in the nature of an honorarium. By the order of the court in probate there has been allowed to them compensation at the rate of five hundred dollars a month from February 5, 1903, the date of the making of the decree of distribution, to June 23,

1908, five years after the decree of distribution was entered, that is to say, compensation has been awarded for full five years from the date of the entry of the decree, and for nearly five months additional, being the time between the date of the making of the decree and the date of its entry.

We conceive the important question in this consideration to be, not the duration of the trust, but the length of time for which the trustees were to receive the compensation fixed by the will. The will provides for a trust to endure for five full years from the *entry* of the decree of distribution, and it provides that the trustees should receive compensation at the rate of five hundred dollars per month for the full term of the trust. Clearly this means that in the view of the testator the full term of the trust was to be five years—no more, no less. If by accidents or contingencies, as by litigation, which might necessarily prolong the life of the trust, its duration was extended, there is nothing in the will to lead to the belief that the testator contemplated a fixed remuneration at the rate of five hundred dollars a month for any prolonged or indefinite period. Considering the services rendered, the remuneration was not unlike a bequest to each of thirty thousand dollars payable in monthly installments of five hundred dollars. If this was indeed the testator's view, and it may well be said that it was his view, as compared with the other which would subject the trust estate to the enormous drain of fifteen hundred dollars a month for an undetermined and indeterminable period, that is so long as the trust might last,—then it follows that under the will the trustees were entitled to a compensation of five hundred dollars a month for sixty months, and that under the will they were entitled to no more. Any other further or additional compensation beyond this must rest not upon the provisions of the will but upon the value of the services actually rendered, to be fixed by the court. We are the more confirmed in our view that this is the true construction, by consideration of the facts actually presented. It was unquestionably the duty of the executors, who were themselves to be the trustees, and of the attorney for the executors, who was himself to be a trustee, to see that the decree of distribution was promptly entered. Their right in law to act as trustees would be founded upon this entered decree. Their right to compensation should in law have begun from their formal assump-

tion of trusteeship after decree of distribution entered. They, and no one else, failed to have the decree entered, notwithstanding which they made over to themselves the trust property and proceeded with the execution of the trust. They base their claim for compensation not from the time when, under the will, it was declared the trust should begin, but from the time when they caused it to begin. Under their contention, if by their remissness the decree of distribution had not been entered for ten years after the date of its making, they would be entitled to compensation at the rate fixed by the will for fifteen years. Such a construction would be a plain temptation to the trustees to defeat, to their own advantage, the manifest intent of the testator.

The fact that the court upon the filing of their first account in 1904 allowed them compensation fixed by the will for the time intervening between the actual commencement of the trust and June 23d, when by the will its commencement was contemplated, is in no way determinative of their right to future compensation. For if, as we have said, the will contemplated a compensation of five hundred dollars a month for five years, it was a matter of trifling significance when the trust was finally brought to a close, whether they had received any or all of this sum by way of advancement.

We held, therefore, that as concerns the life of the trust, the controlling consideration under the will was that it should exist for five years after the entry of the decree, though of course it might, by reason of litigation, have been still further prolonged. But we hold as to the compensation of the trustees that the controlling consideration was not the time after entry, but was the fixed period of five years; that when the trustees had received compensation for the full five years, compensation for any additional term to which the trust may have been prolonged, should rest not upon the terms of the trust but upon an award of the court in *quantum meruit*.

The five hundred dollars attorney's fees made chargeable against the trust property for the successful opposition of the trustees Murphy and Jordan to the petition for the termination of the trust are allowed. That judgment having become final, the inquiry here is not open as to its soundness, and notwithstanding that it was an effort by one of the trustees, and not by the beneficiary, to terminate the trust, still the action

of the resisting trustees must be held to have been the successful defense of the trust. Their legitimate and necessary disbursements in this regard are therefore chargeable against the trust property.

So much of the order and decree appealed from as allows the trustees compensation under the will after receiving the thirty thousand dollars for the five years as fixed by the will, is hereby reversed, with directions to the trial court to allow the trustees compensation for the extended period of the life of the trust over five years, in such sum as it shall find merited.

Melvin, J., Shaw, J., and Beatty, C. J., concurred.

LORIGAN, J., dissenting.—I dissent and adhere to the views expressed in the opinion filed on the original submission of the cause.

Angellotti, J., and Sloss, J., concurred.

Rehearing denied. In denying a rehearing the court in Bank filed the following opinion on March 22, 1911:—

Counsel for respondents in his petition for a rehearing of this cause implicitly concedes that we have given a correct construction to the will of Charles Hanson, but thinks that, in our effort to do what we conceive to be substantial justice, we have violated the rule of *res judicata*—a rule the potency of which as he says, is sufficient *ex albo facere nigrum, ex nigro album, ex curvo rectum, ex recto curvum.* This criticism is based upon a construction of the decree of distribution which is at variance with our construction of the will. But we think this supposed incongruity is far from obvious.

If the testator in fixing the commencement of the five-year trust term at the date of the "entry" of the decree of distribution meant the time when the law made it the duty of the clerk to enter the decree in contradistinction to the time to which a careless, incompetent or corrupt official might postpone the performance of that simple ministerial and imperative duty—if, in other words, his plain intention was that the commencement of the trust term should coincide with the close of the administration when the exigencies of the case would require the active duties of his chosen trustees to begin, we

see no reason why the language of the will which manifests this intent should receive a different construction when used in the decree of distribution. There is no leaning in favor of the view that a decree of distribution has misconstrued a will or that it contains provisions which will frustrate the intentions of the testator. On the contrary the presumption is quite the reverse. That the will not only may be construed as here indicated, but that any other construction would have imperiled one of the most important of its provisions is apparent. The right of the primary beneficiary of the trust, William H. Hanson (the only son of the testator), to take the *corpus* of the trust estate depended upon his surviving the trust term. If the beginning of the term, and consequently its end, could be postponed by the delinquency of the clerk for nearly five months, it could in the same way have been postponed for five years, and if the son had died within the extended period the *corpus* of the trust estate must have gone, not to his heirs or devisees, but to the heirs or devisees of the widow if she survived him, or to the heirs or devisees of Chesebrough if she did not. Just suppose, therefore, that William H. Hanson had died between the fifth day of February and the twenty-third day of June, 1908, leaving a widow and children, and the contest had been between his heirs and Chesebrough under the terms of the will and decree of distribution, would any court say that the testator when he used the expression "entry of this decree of distribution" had in mind the time when a careless, incompetent or dishonest clerk might choose to enter it, rather than the time when it would be his duty to enter it? We scarcely think so. If this is a correct construction of the will why should the decree of distribution receive a different construction? It uses the same language that is found in the will, and when it says "entry of this decree" why may we not construe those words as referring to the time when the decree would be entered if the law was obeyed, and why especially should we not give it that construction when both the court who made the decree and the trustees who obtained it, acted upon that construction—the trustees in claiming and receiving, and the court in awarding the compensation of fifteen hundred dollars per month from the date of the rendition of the decree? To answer this question as we have answered it we have only to presume that in framing the

decree of distribution the court acted upon the assumption that the clerk would perform his duty and in approving the accounts of the trustees it acted upon the equitable maxim that what ought to have been done was done.

The petition for a rehearing is denied.

> BEATTY, C. J.
> HENSHAW, J.
> SHAW, J.
> MELVIN, J.

The following is the opinion of Department Two, filed on the original submission of this cause, and adopted by Justices Lorigan, Angellotti, and Sloss as expressive of their views on the hearing in Bank:

LORIGAN, J.—These are two appeals taken from an allowance of certain sums to William H. Jordan and S. G. Murphy, as trustees of a trust created by the last will of Charles Hanson, deceased, and of which they, together with the appellant H. C. Chesebrough, were the trustees.

Charles H. Hanson died in the city and county of San Francisco on March 31, 1898, leaving a will with an accompanying codicil. He appointed as his executors H. C. Chesebrough and S. G. Murphy, and by the terms of his will created a trust as to certain shares of the capital stock of the Tacoma Mill Company, and appointed said H. C. Chesebrough and S. G. Murphy, together with William H. Jordan, as the trustees of said trust. The will with the codicil was duly admitted to probate and letters testamentary issued to the executors nominated in the will. The trust clause of the will declared:—

"Ninth: I hereby give and bequeath to H. C. Chesebrough, of Oakland, Samuel G. Murphy and William H. Jordan, of San Francisco, all the interest which I may possess at the date of my death in and to the capital stock of the said Tacoma Mill Company, after the payment of all my just debts, funeral expenses and the foregoing legacies, the same to be held by them in trust for the period of five (5) years from and after the date of the entry of this decree of distribution of my estate, or until the death of my son, William H. Hanson, should he die prior to that time."

As to the beneficiaries of the trust the trust clause provided

that should the testator's son, W. H. Hanson, be living at the expiration of said five years, the trust property should be delivered to him, and thereupon the trust should cease and terminate; that in the event of his death prior to the expiration of said five years from the date of entry of the decree of distribution, the trustees should deliver all the trust property to the testator's wife, Charlotte Hanson, if then living, or, if she be dead, the said trust property should be delivered to H. C. Chesebrough, and thereupon the said trust should terminate.

The trust clause also provided for the manner in which the trust property should be managed and for the discharge of active duties on the part of the trustees relative to it. It is unnecessary to set forth these provisions in particular, as the conclusion we reach on this appeal makes a consideration of them unnecessary.

In the codicil to his will the testator provided, with respect to compensation to be paid to the trustees for their services as such trustees, as follows: "To H. C. Chesebrough, Samuel G. Murphy, and to William H. Jordan, the sum of six thousand ($6,000) dollars per annum during the full term of their trusteeship, and that said sum of money shall be so paid to each of said trustees in equal monthly installments."

On February 5, 1903, a decree of distribution of the estate was made, under which there was distributed to the trustees named in the will by virtue of the trust clause referred to, 3749 shares of the Tacoma Mill Company stock, this constituting the trust fund to which the trust clause related. The decree of distribution was not, however, in fact *entered* until June 23, 1903—more than four months after it had been made, but immediately on the making of the decree of distribution the executors delivered the trust funds to the trustees.

Two accounts were filed by the trustees in the matter of the trust prior to June 25, 1908, in which they credited themselves with compensation as such trustees in the sum of five hundred dollars per month from February 5, 1903, to November 5, 1908, which included compensation from the date of the making of the decree of distribution to its entry. These accounts were settled and no appeals taken from the orders of settlement.

The widow of the deceased, Charlotte Hanson, named as one of the beneficiaries of the trust, died prior to the making of the decree of distribution and commencement of the trust

term, and on February 5, 1908, H. C. Chesebrough, another of
the beneficiaries (also one of the trustees) relinquished to W.
H. Hanson, the only other beneficiary, all his interest in the
trust property, thus constituting W. H. Hanson the sole bene-
ficiary of the trust fund.

It appears in a general recital in the decree, from particular
portions of which these appeals are taken, that subsequent to
his relinquishment of his interest as beneficiary in favor of
Hanson, and some time between February 5, 1908, and June
23d of that year, Chesebrough, as trustee, applied to the court
to have the trust declared terminated, which application was
denied.    Thereafter, and on June 25, 1908, the appellant
W. H. Hanson alone, as a sole beneficiary, filed a petition for
an order in the matter of said trust, requiring the rendition of
a final account of the said trustees; prayed also for a decree
declaring the trust terminated as of February 5, 1908, and for
a distribution of the trust property to him as the sole bene-
ficiary under the trust.

The answer of the trustees W. H. Jordan and S. G. Murphy
to this latter application, practically set up the facts as hereto-
fore stated, and alleged that the trust terminated under the
terms of the will on June 23, 1908, and not on February 5,
1908, as claimed by the petitioner.    In both answers a claim
for compensation for trustees from February 5, 1908, to June
23, 1908, was made, and a further claim on the part of W. H.
Jordan for the sum of five hundred dollars expended by him
for attorney's fees in resisting the application previously made
by their co-trustee H. C. Chesebrough to have the trust ter-
minated.

The trustee H. C. Chesebrough in his answer joined with
W. H. Hanson in his application to have it determined that the
trust terminated on February 5, 1908; made no claim for fees
after February 5, 1908, and rendered an account of receipts
and disbursements from which it appeared that there was in
the hands of the trustees 3749 shares of the capital stock of
the Tacoma Mill Company and $31,954.23 in cash as the trust
fund.    The court on the hearing of the petition and answers
settled the accounts of the trustees, allowed S. G. Murphy and
W. H. Jordan fees as such trustees for the period between
February 5, 1908, and June 23, 1908, of $2299.88 each on a
basis of five hundred dollars per month or six thousand dollars

per annum, and allowed trustee W. H. Jordan an additional sum of five hundred dollars for the services of his attorney as prayed for in his answer; declared the trust terminated as of June 23, 1908, and that the beneficiary W. H. Hanson was entitled·to all the trust property.

These appeals are from so much only of the order as allows fees to the trustees S. G. Murphy and W. H. Jordan between February 5, 1908, and June 23, 1908, and allowing an additional sum of five hundred dollars to W. H. Jordan for fees of his attorney, and are taken by both Chesebrough, as one of the trustees, and Hanson as the sole beneficiary.

The first contention of the appellants is that the court erred in denying the original application of Chesebrough as trustee for a decree terminating the trust, which proceeding is referred to in general terms in the present decree. They insist that after the death of Mrs. Charlotte Hanson and the relinquishment to W. H. Hanson of his interest in the trust property by the only other beneficiary, Chesebrough, it was the duty of the court on application therefor to terminate the trust. This proposition is argued at length by counsel for appellants, but we are at a loss to perceive how any such question can be presented or considered on this appeal. All we have in the record as to any proceeding brought for the termination of the trust anterior to the proceeding in which these appeals are taken is a general recital in the decree appealed from that a proceeding of that character was instituted and was unsuccessful.

This recital is only made in connection with an allowance by the court to the trustee Jordan of fees to compensate his attorney in resisting that petition for the termination of the trust. If a prior petition for the termination of the trust was made (and the recital in the decree discloses that there was) it was a proceeding independent of the present proceeding, and when denied it was the duty of the petitioner to appeal directly from the order denying that application, if dissatisfied with it. He cannot raise the question of the validity of the order of the court denying his former petition in this proceeding, which is entirely independent of the former one, based on a separate and distinct petition and involving an entirely different decree.

Aside from this, however, the only question which could have been involved in the prior proceeding was whether the

trust terminated on February 5, 1908, or June 23, 1908. But that was the precise question which in the subsequent petition by the appellant Hanson, joined in by Chesebrough and culminating in the present decree, was presented to the court for determination, the petitioner and Chesebrough claiming that the trust terminated on February 5, 1908, and the respondents Murphy and Jordan, as trustees, claiming that it terminated on June 23, 1908. On this question, the trial court in the decree from portions of which these appeals are taken, adjudged "that the said trust created by the last will and testament of Charles Hanson, deceased, terminated on the 23d day of June, 1908." No appeal is herein taken from this portion of the decree, and that being true the adjudication by the court that the trust terminated on June 23, 1908, is final and conclusive on that question.

The decree of the court as to when the trust terminated not being open to question, it would appear that the compensation of the trustees as allowed by the court, and the correctness of which appellants question, is in accordance with the express provisions of the trust and the will on the subject. The trust provides that the property shall be held "for the period of five years from and after the date of the *entry* of this decree of distribution of my estate," and the provision of the will with respect to the trust clause provides that the trustees shall receive as compensation for their services six thousand dollars per annum payable in monthly installments during the full term of their trusteeship. As the trust did not terminate until June 23, 1908, it is quite obvious that the trustees were, by the express terms of the will, entitled to compensation up to that date, and that the allowance for the period of which appellants complain—from February 5, 1908, to June 23, 1908, was in strict compliance with the terms of the trust. This seems so plain as to make further discussion on the subject unnecessary.

Nor could the correctness of the determination of the court be affected by the fact that the trustees took the property and held it as such from the date of the making of the decree of distribution until the *entry* thereof, the latter date being the time when, by the language of the trust, the trust term created by the testator was to commence. It is not pretended that the delay in entering the decree of distribution was occasioned by

any act of either the executors or the trustees. It was the duty of the trustees to accept the trust funds when the decree of distribution was made and the executors prepared to turn them over to them, and to hold them until the entry of the decree, from which date their active duties as trustees were to commence. They were entitled to compensation during that period, and it was proper for the court to make an allowance to them on the basis prescribed by the testator for their compensation during the five years after the entry of the decree. Anyhow, if there could be a question on this point, inquiry into it would be foreclosed by the order of the court made in the settlement of the first account of the trustees in which they credit themselves with compensation for that period, which was allowed by the court, and from which order of allowance no appeal was taken.

With respect to the allowance by the court to the trustee Jordan of the sum of five hundred dollars as fees for his attorney in resisting the effort of appellant Chesebrough in the first proceeding to terminate the trust. As by the terms of the trust it was not to terminate until the expiration of five years from the date of *entry* of the decree of distribution it was the duty of the trustee to resist any attempt to terminate it before that period. It is well settled by the authorities that in the discharge of such duty a trustee has a right to employ attorneys and to have an allowance in a reasonable amount made by the court from the trust funds for their compensation. No claim is made that the allowance is unreasonable.