CARLOTTA HEATH, appellant,

*v.*

FREDERICK R. MADDOCK, executor, &c., respondent.

[Argued July 2d, 1914. Decided November 16th, 1914.]

On appeal from a decree of the court of chancery advised by Advisory Master Magie, who filed the following opinion:

Of the issues presented by the pleadings, nothing has been laid before me except the accounting of the defendant as executor and trustee of Margaret C. Heath, deceased, under her testamentary dispositions contained in her will and four codicils. Testatrix died March 18th, 1906, when complainant, her granddaughter, was about thirteen years old. The will and codicils were proven in Essex county by Charles T. Glen and defendant, who by the fourth codicil were made executors, trustees and guardians of complainant. No inventory of the estate was filed until about October 1st, 1911, when defendant (who had survived Mr. Glen) filed an inventory and also his account in the orphans court of Essex county. By an order made in this cause that account has been brought here for settlement, with the consent of counsel of both parties.

Before the matter was presented to me the account was referred to an expert accountant, who examined it and reported thereon. By his report the defendant had charged himself cor-

rectly except an overcharge of $27.48; the correct amount of charges being $153,360.20. The payments claimed by defendant in his discharge were reported as exceeding the correct amount by $14.15, reducing the discharges to $29,544.70, and the total amount stated by the expert was $115,038.78, of which $111,838.43 was *corpus* and the remainder was income. This report has not been criticised in the case and must stand as the basis of settlement of the account, unless complainant's claim to surcharge defendant has been made good.

· The complainant's claim is that defendant wasted her estate under the following circumstances:

By her last will, testatrix provided that defendant should continue to live in the house, left with its contents to the complainant, her granddaughter, with the husband of testatrix and the granddaughter until the granddaughter arrived at the age of twenty-one years, and free of charge, provided defendant remained single. After the death of testatrix, defendant continued to live, free of charge, in the house with the complainant until he married in the spring of 1910. At that time Mr. Glen had died, and defendant proposed to send complainant to a boarding school. It then became a question whether the house should be closed, or should remain occupied as a home to which complainant might return in her vacations. Looking at the financial condition of this school girl, and the friendly relations between the parties, defendant exercised his discretion to keep open the house as a home for complainant. I think the discretion was reasonably exercised. While the defendant had lost, by his marriage, any right to live free in the house, there was nothing in the will forbidding him to occupy the house or to take his wife there. By the first clause of the second codicil, testatrix committed to defendant the sole charge of the house and the manner of living and of the education of complainant. This duty he could better perform by continuing to reside in the house.

Under the advice of counsel, on the 15th day of May, 1909, he took up with his wife his abode in this house, to the apparent satisfaction of complainant, and continued there until the 30th of September, 1911. He recognized that he was not entitled to

live there free of charge, at the expense of complainant, and he concluded that he would contribute a share of the expenses of the establishment by purchasing, with his own funds, the principal part of the food for the household. Whether or not this was an arrangement entirely judicious for a trustee to make may be doubtful. He obtained lodgings and board in a comfortable house, with the use of many improvements. But when it is considered that under his deliberate judgment it was wise to keep the house open for his ward's benefit, I have reached the conclusion (contrary to my first impression) that the question is not what he ought to be required to pay to the estate for the advantages he had, for, if he had not occupied the house it is obvious that, under the circumstances, he could not have utilized the house to complainant's benefit, but whether the amount he contributed was sufficiently large to prevent any encroachment upon the expenditure of the complainant for the preservation of the house as a home.

Without going into details, I state the conclusion I have arrived at to be, that the contributions of the defendant were, in fact, sufficient, and that his account ought not to be surcharged with anything on this matter.

The other matter submitted to me relates to the commissions of the defendant.

By the will of Mrs. Heath there was a bequest to defendant of $9,000, "in full settlement of all claims and demands of every kind and nature against my estate, except such as are provided for in this my will." There was the further provision, as before stated, giving to the defendant the privilege of living in the house free of charge until complainant became twenty-one years of age. There was a further provision giving each of her executors $500 "in lieu of further commissions or allowances." By the fourth codicil to her will testatrix gave each of her executors, viz., defendant and Charles T. Glen, the sum of $500 "in lieu of further commissions."

About the time defendant filed his account, he filed with the surrogate a writing renouncing all claim to the specific compensation given by the will and codicil.

It is now contended that this renunciation requires that defendant should pay back to the estate of his ward the $9,000 (which he received as a legacy) with interest, and also compensation for the period of time he lived in the house free of charge, on the ground that both these provisions were for commissions and allowances to him as executor or trustee. This contention, so far as relates to the $9,000 bequest, is put upon the ground that the bequest was "in full of claims and demands against her estate," and that she must have considered the claim of an executor or trustee to commissions was a claim or demand upon her estate. If that meaning is given to the language used it still fails to sustain complainant's contention, because the gift is to settle all claims and demands except those otherwise provided for in the will, and she made a provision for commissions.

Nor do I think the other contention respecting the living of the defendant in the house free of charge is any better supported. The bequest of the two executors of $500 each, which was to be in full of all commissions is applicable to both executors, and plainly indicates that testatrix thought she had the right to limit the amount which each should obtain for commissions. It is possible, perhaps probable, that testatrix did not know the state of the law which provides that an executor may renounce a specific compensation for his services, and claim such compensation as the court may award. In my judgment, the limitations cannot be enforced as against the renunciation of defendant.

It is argued that the renunciation came too late, not being filed with the surrogate until after the defendant had managed the estate for several years as executor and as trustee. It is possible that limitation of time for filing such a renunciation might be properly imposed by the legislature, but it is not within the power of courts to so impose it and limit the executor's right.

The result is that I think that defendant should be allowed commissions beyond the amount fixed by testatrix as the estate exceeds $50,000, the amount allowed must be fixed by a consideration of actual services. During the period covered by this account defendant has managed the estate both as executor and trustee. The account must be considered as the final account of

the executor. For his services in both capacities I think a commission of three per cent. on the sum which has come to his hands should be allowed.

I will advise a decree allowing the account with the corrections reported by the expert, with commissions as above stated.

*Messrs. Edward A. & William T. Day,* for the appellant.

*Messrs. Lum, Tamblyn & Colyer,* for the respondent.

PER CURIAM.

The decree appealed from will be affirmed, for the reasons stated in the opinion filed in the court below by Advisory Master Magie.

*For affirmance*—GARRISON, TRENCHARD, BERGEN, MINTURN, BOGERT, VREDENBURGH, WILLIAMS—7.

*For reversal*—THE CHIEF-JUSTICE, SWAYZE, PARKER, BLACK, HEPPENHEIMER—5.