## IDA M. PALMER *vs.* FANNIE TAILER CARPENTER.

JANUARY 9, 1934.

PRESENT: Stearns, C. J., Rathbun, Sweeney, Murdock, and Hahn, JJ.

PER CURIAM. By this bill in equity for specific performance the complainant seeks to compel the respondent to convey to her certain real estate situated in the city of Newport. After hearing on bill, answer and proof, the Superior Court entered a decree granting the relief prayed for, and the cause is here on respondent's appeal from said decree.

In her answer the respondent admits that she affixed her signature to the agreement for sale and purchase, but alleges that, by reason of a serious physical and mental disorder from which she was suffering at that time, she was incapable of comprehending and understanding the subject matter of the contract and was unable to appreciate the probable consequences of signing such instrument. She further alleges that the sale price was wholly inadequate.

The respondent listed for sale or rental the property in question with the Newport Realty Trust Corporation. Mr. Adams, an officer of the corporation, after receiving from the complainant an offer of $10,000 for the property, went to New York to submit the offer to the respondent. She refused the offer but stated she would accept an offer of $12,000 for the property, including the greater portion of the furnishing of the house. Although he had no offer for that amount, Mr. Adams, in the presence of respondent, wrote a formal agreement of sale by respondent to complainant for said amount. He left this writing with respondent and advised her to consider whether she desired to sell for $12,000 and, if she did so decide, to execute this agreement and send it to him at Newport. She executed the agreement and sent it to Mr. Adams who submitted the proposition to the complainant, secured her signature to the agreement and received from her $1,200 as part payment.

The respondent testified that on June 20, the day Mr. Adams saw her at her hotel in New York, her condition was much worse than it had been theretofore; that she was broken in mind, body and soul; that she never wanted to sell "Cliff Lawn" but that she was possessed of a strong urge to rid herself of all her property; that she did not blame Mr. Adams nor did she sign the contract because of his influence but because she was dominated by the idea of ridding herself of her property; that from four o'clock on the day of the interview until two o'clock the next morning she paced the floor; that she inserted in the contract a provision in regard to taxes, scratched it out and then inserted it again; that she wrote a letter to Mr. Adams; that she signed the contract at about two o'clock in the morning of June 21 and mailed it; that as soon as she had dropped the letter in the mailbox she regretted her action and endeavored to regain possession of the letter.

Alienists of very high repute testified in answer to hypothetical questions that "Mrs. Carpenter, with a document before her, as the result of antecedent simultaneous influences preying upon her mind, was so upset emotionally and so dominated by compulsive thinking as to render her unfree in the sense that she did not exercise average, normal judgment and freedom of choice in signing the document." There was considerable other testimony as to her abnormal conduct and appearance when she came to Newport a few days after she signed the agreement. On the other hand there was expert testimony that respondent did understand the nature and effect of the transaction. Several letters written by her to the agent prior to his visit to her in New York show a clear comprehension of the situation in respect to this property.

Although she would have been satisfied to sell the property for $15,000, there is no doubt that respondent strongly regretted signing the agreement to sell for $12,000. It is significant that Dr. Sullivan, her physician at Newport, who examined her at the time when she was so perturbed by

reason of signing the agreement, testified that she was then competent to sign such an agreement.

In his rescript the trial justice said: "there is no testimony in the case that would permit the court to find that the sum of $12,000 in cash was not a fair price at the time the agreement was executed. It is perhaps significant that the respondent offered no testimony of real estate men tending to show the fair market value of the property on June 20, 1932."

Said justice found that no inadequacy of consideration had been proved; that at the time the agreement was signed the respondent was in full possession of her faculties; that she was not subjected to any undue influence or improper pressure either by Mrs. Palmer or by the broker and that it had not been shown that it would be inequitable to enforce specific performance.

A careful examination of the record fails to disclose that any of the findings of the trial justice are unwarranted from the evidence. It is admitted that no undue influence was exercised over the respondent or advantage taken of her either by the complainant or by Mr. Adams, respondent's broker. No inequitable incidents were shown. Inadequacy of consideration unaccompanied by fraud or other inequitable incident is insufficient to defeat specific performance. *Sweeney* v. *Brow*, 35 R. I. 227; Pomeroy Eq. Juris., § 926.

To set aside a contract on the ground of incompetency of a party it is not sufficient merely to show that the party was not mentally normal. The rule is stated in Pomeroy Eq. Juris., § 947, as follows: "It is equally certain that *mere* weak-mindedness, whether natural or produced by old age, sickness, or other infirmity, unaccompanied by any other inequitable incidents, if the person has sufficient intelligence to understand the nature of the transaction, and is left to act upon his own *free* will, is not a sufficient ground to defeat the enforcement of an executory contract, or to set aside an executed agreement or conveyance."

The appeal is denied and dismissed, the decree appealed from is affirmed and the cause is remanded to the Superior Court for further proceedings.

*Burdick, Corcoran & Peckham, Edward J. Corcoran*, for complainant.

*Claude R. Branch, Mortimer A. Sullivan, J. Russell Haire*, for respondent.