This matter comes before this court by reason of objections made to the proposal of the Fidelity Union Trust Company, as trustee appointed by an order of this court dated December 10th, 1935, to sell a purchase-money mortgage it acquired under the circumstances hereinafter related for the full balance remaining due thereon and to deduct from the proceeds of such sale two per cent. on the principal collected by the trustee during the course of the administration as and for its commissions on corpus. The estate of Louis Elleau, deceased, holding 15,000/48,750ths in interest, is the only investor objecting to the trustee's proposals; the objection to the sale is based on the alleged inability of the Elleau estate to reinvest the proceeds at as good a rate of interest as the mortgage yields. A further proposal by the trustee to *Page 295 
distribute the proceeds of such assignment without filing a final account in this court, but to render to each investor at the time distribution is made a statement of the moneys received by the trustee from the time of the establishment of the trust in order to save the expense of such an account, has not met with any opposition from any investor. Inasmuch as the other investors have not objected to any of the trustee's proposals, it is presumed that their silence bespeaks consent.
The issues raised by the objections of the Elleau estate affect every trust established by orders of this court in the within cause. Many of these trusts have not yet been terminated, and it will be helpful in the guidance of all trustees appointed by this court in this cause, and their beneficiaries, for this court to recall to them the purposes for which these trusts were established, as well as this court's views heretofore expressed during the course of these proceedings on the question of the trustees' compensation.
The trust established by the order of December 10th, 1935, has already continued for nine years; if not liquidated now the trust will continue until maturity of the mortgage in 1951. The purpose of the trust, when established, was to liquidate investments made in guaranteed mortgage certificates issued by Fidelity Union Title and Mortgage Guaranty Company. The duration of a trust is dependent upon and determined by its purpose. Warranty Buildingand Loan Association v. Bloch, 131 N.J. Eq. 414; 25 Atl. Rep.
2d 871. Liquidation in the manner proposed accomplishes the purpose for which the trust was established and averts the risks inherent in this type of security without violating the terms of the trust.
The right of the trustee to a commission of two per cent. on principal collected (in view of the objection of the Elleau estate), also depends upon the order of December 10th, 1935, and the circumstances attendant upon the entry thereof. A review of the proceedings had in this cause demonstrates that the trustee's final compensation was to be determined by this court upon a final accounting. Inasmuch as no objection is made to the trustee's proposal not to file a final account, the *Page 296 
question of the trustee's right to two per cent. of the principal passing through its hands during the course of the administration in addition to the commissions already authorized to be deducted and retained by it will therefore be considered as if the matter arose on a final accounting. It is now appropriate to consider the circumstances leading to the entry of the order of December 10th, 1935, which created this trust and appointed the Fidelity Union Trust Company trustee.
During the course of its operations the Fidelity Union Title and Mortgage Guaranty Company (hereinafter called "Title Company") had issued participating certificates against specific mortgages. At the time of the appointment of William H. Kelly and J. Ashley Brown as trustees of said company in January, 1934, $66,202,361.13 worth of mortgages had been assigned to various investors in the form of participation certificates, each containing a guaranty by said company of payment of principal and interest upon maturity of the mortgage or at the option of the Title Company eighteen months thereafter. There were about 8,000 holders of such certificates, and the certificates were issued in denominations as low as $50 and up to $315,000. The mortgages themselves were of short maturity, ranging from three to five years. The participation certificates were not issued against a pool of mortgages; rather, each certificate assigned to the extent of the investor's investment therein an aliquot part of a particular mortgage which was expressly identified in the certificate.
Shortly after the appointment of the trustees, this court, by its order dated April 24th, 1934, extended to investors the privilege of withdrawing their investments from the control of the trustees of the Title Company by surrendering their guaranties and paying the charges specified in said order. Where an investor had a whole mortgage assigned to him, the process of terminating the trustees' control was simple, but where a mortgage had been divided into fractional parts and assigned in the form of participation certificates concerted action by the investors was necessary in order to comply with the conditions established by the order of April 24th, 1934. The conditions imposed by this order required *Page 297 
all investors having an assigned interest in a mortgage to join in an application to the trustees for the withdrawal of their investment from the control of the trustees; failing such unanimity, the order of April 24th, 1934, extended the privilege to investors holding twenty-five per cent. or more in interest to apply to the court for leave to withdraw their mortgage from the trustees on the conditions imposed by said order "and upon such other terms and conditions as the court may prescribe." Many were the instances when investors in a particular mortgage sought their co-investors to join in an application directly to the trustees but failed and were therefore compelled to apply to this court for leave to withdraw the mortgage under a plan approved by this court as against non-cooperating or objecting investors.
In 1934, when these proceedings began, Mortgage Investment No. M-67832 consisted of a mortgage in the sum of $48,750, encumbering premises known as 425-427 Hudson Avenue, West New York, New Jersey. Fidelity Union Trust Company (hereinafter called "Trust Company"), as the holder of a participation certificate in said mortgage, attempted to obtain the consent of all other investors therein to withdraw it from the trustees of the Title Company pursuant to the order of April 24th, 1934. To accomplish this, the Trust Company submitted to each investor a trust agreement appointing the Trust Company as trustee for all investors holding participation interests in this mortgage, authorizing it to comply with the conditions of the order of April 24th, 1934, specifying the terms of the trust for the future administration of the investment and defining the trustee's powers. Under the trust agreement, the trustee had the power to employ agents to manage or sell the property if it acquired title to the mortgaged premises and pay the usual agent's commissions. The trustee's compensation was fixed as follows:
"12. That the Trustee may deduct and retain as and for its commissions five per cent. of the interest collected upon such mortgage; or if the Trustee be in possession of the mortgaged property as the holder of the legal title thereto, then it may deduct and retain as and for its commissions five per cent. of the rentals received by it." *Page 298 
It is to be noted that while this provision clearly defines thequantum of the trustee's commissions on income, it is silent as to the trustee's commissions on principal which, under the terms of the agreement, it was under a duty to collect. It is clear, however, that as to commissions on income the trustee was to receive five per cent. of interest collected, or if it be in possession of the mortgaged property it was to receive five per cent. of the gross rentals received, even though the property was managed by an agent. That this was the common understanding of the trustee's rate of commission on income is evidenced by the views expressed in these proceedings by persons who received this form of trust agreement.
The trust agreement, however, was not signed by the estate of Louis Elleau and the estate of Ludwig Zimmer, which together held $17,000 in participation certificates in this mortgage, nor did the trustees of the Title Company, holding $2,050, sign the agreement. The other investors, consisting of eight in number, including the Trust Company, and holding $29,700 in interest, signed the agreement, but lacking joinder by all certificate holders these eight investors made application to this court, on October 2d 1934, for leave to withdraw under the order of April 24th, 1934. In their application to this court for leave to withdraw, these eight investors submitted a plan for the future administration of the mortgage which consisted in substance of the trust desired to be established by the aforesaid agreement including the power to employ agents and the same rate of commissions on income.
The plan for the administration of the mortgage submitted by these investors, as well as other plans submitted by investors making similar applications to this court, was not approved by the court, and all such applications abided the approval of a plan by the court. Finally, on November 21st, 1934, this court approved a plan for the administration of mortgages which would control such applications. That plan was set forth in "General Order Number One" and contemplated that the terms thereof be incorporated in each order that the court might thereafter make when it granted leave to investors to withdraw their mortgage from the trustees. *Page 299 
"General Order Number One," however, merely defined the rights of the beneficiaries, specified the duties and powers of the new trustee. One of the powers conferred upon the new trustee by "General Order Number One" was the right to employ agents to manage and sell the mortgaged premises if title thereto were acquired, and to pay such agents the usual agent's commissions. "General Order Number One," moreover, neither appointed the new trustee nor stated its compensation; this was expressly left to the specific order approving the plan of withdrawal that was to be entered by the court on each application.
While the court and its trustees and their counsel were formulating the plan of withdrawal that was ultimately established by "General Order Number One" and the form of each specific order of withdrawal, applications similar to the application on Mortgage Investment No. M-67832 came before the court by the score on each motion day. In the oral presentation of these applications by counsel, various rates of compensation, including inspection fees for the new trustee, were announced. The court on numerous occasions, as evidenced by the transcript of the proceedings in this cause, announced that "the trustee who takes his appointment by the court must take it subject to the approval of compensation by the court," and that it did not make any difference what rate of compensation was put in the order of withdrawal, that the trustee's compensation was to be subject to the approval of the court on a final accounting, and that "if additional compensation is appropriate it will be allowed to the trustee; if the commissions are too large they will be taken away from them."
Each order of withdrawal entered after the plan contained in "General Order Number One" was approved, contained a provision authorizing the trustee to deduct and retain certain compensation during the administration of the trust. That the court intended to retain control of the new trustee's compensation and to indicate that the compensation allowed by the order was not final, found expression in the order of withdrawal in the provision, "Such commissions are subject to the approval of the court on accounting unless accounting is *Page 300 
waived." Thus in Mortgage Investment No. M-67832, the order approving the plan of withdrawal, entered on December 10th, 1935, appointing the Trust Company trustee, said this concerning compensation:
"V. That the trustee is hereby authorized to deduct and retain as and for its services and commissions five per cent. of the income collected on said mortgage; or if it be in possession of the mortgaged premises as mortgagee or as the holder of the legal title thereto, to deduct and retain as and for its commissions five per cent. of the gross rentals, unless said property shall be rented or managed by an agent, in which event the Trustee may deduct and retain as and for its commissions only five per cent. of the net rentals received by it after deducting from the gross rentals agent's commissions and all carrying charges except taxes. Such commissions are subject to the approval of the court on accounting unless accounting is waived."
While this provision relaxed the general rule that a trustee is not entitled to pay himself any commissions until his services have been completed and his account allowed, In re LocarnoBuilding and Loan Association, 127 N.J. Eq. 509; 13 Atl. Rep.
2d 791; Lathrop v. Smalley's Executors, 23 N.J. Eq. 192;In re Jula, 3 N.J. Mis. R. 976; In re Ahrend. 99 N.J. Eq. 328; Inre McMillin, 120 N.J. Eq. 432; 185 Atl. Rep. 913; Titsworth v.Titsworth, 107 N.J. Eq. 436; 152 Atl. Rep. 869; Pomeroy v.Mills, 35 N.J. Eq. 442: reversed on other grounds, 37 N.J. Eq. 578; Conover v. Ellis, 49 N.J. Eq. 549; 25 Atl. Rep. 701, by permitting the trustee compensation on account as the trust was being administered to meet the trustee's operating expenses, this court did not relinquish control of the trustee's final compensation. The general rule has since been likewise invaded byN.J.S.A. 3:11-2. Nor is the principle illustrated by such cases as Middleton v. Carter, 73 N.J. Eq. 624; 68 Atl. Rep. 763;affirmed, 74 N.J. Eq. 853; 71 Atl. Rep. 1134; Randall v. Gray,80 N.J. Eq. 13; 83 Atl. Rep. 482; Commercial Trust Company of NewJersey v. Spiegelberg, 117 N.J. Eq. 171; 175 Atl. Rep. 164;affirmed, 119 N.J. Eq. 376; 182 Atl. Rep. 875, that where the trust instrument fixes the trustee's *Page 301 
compensation it will be binding upon and control the court, applicable, for the court created this trust by its order and by the very order establishing this trust reserved unto itself the right to increase or diminish the trustee's compensation. But even where the trust instrument fixes the trustee's compensation, the trustee is afforded relief against inadequate compensation in testamentary trusts by N.J.S.A. 3:11-5; Parker v. Wright,103 N.J. Eq. 535; 143 Atl. Rep. 870; Heath v. Maddock, 83 N.J. Eq. 681; 94 Atl. Rep. 218; In re Estate of Dean, 42 N.J.L.J. 301;Tichenor v. Mech. and Metals National Bank of New York, 96 N.J. Eq. 560; 125 Atl. Rep. 323. As to trusts inter vivos, this court by virtue of its inherent powers in the field of trusts can relieve a trustee from serving for an inadequate compensation by increasing the compensation fixed by the trust instrument to make it adequate, In re Battin, 89 N.J. Eq. 144; 104 Atl. Rep. 434;Biscoe v. State, 23 Ark. 592; Cf. State v. Sartorius,130 S.W. Rep. 2d 541; Gusweiler v. Riverview Apartments,6 N.E. Rep. 2d 587; Smith v. Stover, 262 Ill. App. 440;Hanson v. Jordan, 159 Cal. 401; 14 Pac. Rep. 810; Schloss v.Schloss, 159 Atl. Rep. 745, by awarding additional compensation for services which were not within the duties of the trustee as contemplated by the instrument creating the trust, Baydrop v.Second National Bank, 120 Conn. 322; 180 Atl. Rep. 469 or by permitting the trustee to resign rather than continue to serve for no or inadequate compensation. Randall v. Gray, supra.
It is said by the United States Supreme Court in Barney v.Saunders, 16 How. 534, that:
"In England, courts of equity adhere to the principle which has its origin in the Roman law, `that a trustee shall not profit by his trust,' and therefore that a trustee shall have no allowance for his care and trouble. A different rule prevails generally, if not universally, in this country. Here it is considered just and reasonable that a trustee should receive a fair compensation for his services; and in most cases it is gauged by a certain percentage on the amount of the estate. * * *"
In New Jersey as said in Wilkinson v. Abbott,30 Atl. Rep. 1098 (at p. 1099): *Page 302 
"* * * `The allowance of commissions, it will be seen, while it is in the discretion of the court, is subject to certain positive limitations, which cannot be exceeded, and also to certain admonitory provisions, by which the legislature intended still further to circumscribe the exercise of the discretion. It is provided that the amount to be allowed shall not exceed certain rates, and also that, in the exercise of this discretion, regard is to be had to what are the true grounds of compensation, trouble, risk, and actual pains, rather than to the size of the estate.' While in Van Houten v. Van Houten, 45 N.J. Eq. 796;18 Atl. Rep. 842, it is held that this statute does not control the Court of Chancery, in fixing the commissions allowable to trustees appointed by the court, to execute trusts created by a will, it is said in Holcombe v. Holcombe, 13 N.J. Eq. 415 (atp. 419), to afford a criterion by which, at least in the judgment of the legislature, the value of these services may be estimated. * * *"
In Marsh v. Marsh, 82 N.J. Eq. 176; 87 Atl. Rep. 91, the court stated (at p. 178):
"* * * the allowance is based entirely upon what is deemed to be proper compensation, as gathered from the amount of work done, as shown by the trustee's accounts, the amount of income and principal handled, and the results obtained. While the maximum rates of commission are fixed by the statute — in this case the maximum rate being five per cent., nevertheless, the actual rate allowed is within the discretion of the court; and the rate allowed depends upon the actual pains, trouble and risk incurred by the executor; each case is to be determined upon its own facts and circumstances. Metcalf v. Colles, 43 N.J. Eq. (16Stew.) 148; Fluck v. Lake, 54 N.J. Eq. (9 Dick.) 638."
With the question of compensation reserved by the court for review upon the termination of the trust, the administration by the new trustee must be examined in order to ascertain whether the commissions authorized to be deducted and retained during the course of the administration constitutes an adequate compensation.
Upon the entry of the order approving plan of withdrawal on Mortgage Investment No. M-67832 on December 10th, *Page 303 
1935, the new trustee was under a duty to reduce the trust res
to its possession, surrender the certificates issued by the Title Company with its guaranties, and pay the withdrawal charges fixed by the order of April 24th, 1934. The new trustee did all this in January, 1936, but only after auditing the books and records of the Title Company to ascertain the status of the account between the Title Company on the one hand and the investors on the other. The mortgage being in default at the time of withdrawal, the rents were hypothecated to preserve the security of the mortgage. This device, however, did not eliminate the defaults, and efforts by the trustee to compel the owner and bondsmen to pay the arrears having failed, foreclosure proceedings were instituted and title to the mortgaged premises acquired in 1937. Claims for deficiency arising in the foreclosure suit were settled after the trustee investigated the financial ability of the bondsmen. Upon the acquisition of legal title in 1937, the trustee entered upon the management of the real estate formerly encumbered by the mortgage. The property consisted of a four-story brick walk-up type apartment building, arranged for twenty-two apartments. The administration now had to concern itself with collection of rents, the elimination of vacancies, the making of repairs, the redecorating of rooms to satisfy the occupants, the replacement of equipment, the institution of tax appeals to obtain tax reductions, and similar problems which the ownership of real estate entails and to this the trustee attended.
True, the trustee employed agents to collect the rents and to effect a sale and paid such agents the usual agent's commissions. This it was authorized to do by the terms of the trust as well as by the law of trusts. In re Van Riper's Estate, 90 N.J. Eq. 217;107 Atl. Rep. 55; Elfreth v. Allen, 106 N.J. Eq. 263;150 Atl. Rep. 561; Pomeroy v. Mills, supra. The employment of agents for such purposes, however, did not relieve the trustee as a matter of fact or as a matter of law from its personal responsibility for the proper administration of the trust created by this court, Elfreth v. Allen, supra. The trustee, in the discharge of its duties, made periodic inspections of the building no less frequently than once a month, audited the return of its agent *Page 304 
and checked with the tenants as to the rental paid. Repairs, installations, replacements, redecorating and the like the trustee itself contracted for and supervised.
Soon after the acquisition of title, the trustee began to list the property for sale. To effect a sale, the property was listed with eight brokers and conferences had with them. Several offers were received and finally one was approved by the trustee at $40,000, payable $10,000 cash and $30,000 secured by purchase-money mortgage, with interest at 4 1/2% and amortization of principal at the rate of $187.50 every three months for a period of ten years, when the mortgage falls due. This sale was consummated on May 23d 1941, and the trustee made the adjustments called for under the contract of sale, received the cash, paid an agent the usual agent's commission for making the sale, and distributed the balance to the investors, and now holds the aforementioned purchase-money mortgage on which there is presently due $27.262.50. This sale returned to the investors 73.78% of their original principal investment.
There are fourteen investors in this trust, few holding similar shares in the trust, and each investor's interest is evidenced by a certificate issued by the trustee which is transferable on the books of the trustee. Nine transfers have been made. Under the order of December 10th, 1935, the trustee is under a duty until the termination of the trust to distribute the net income not less frequently than semi-annually. Each distribution of net income requires the trustee to determine mathematically each beneficiary's share of the available net income, with the trustee being responsible for all errors. $37.728.95, exclusive of principal, has passed through the trustee's hands during the course of the administration from the following sources:
(a) Interest collected on original mortgage .......... $1,120.17
(b) Rentals received from the premises ............... 32,385.20
(c) Interest collected on purchase-money mortgage .... 4,223.58
 __________
 Total ........................................ $37,728.95

Pursuant to the authority conferred by the order of December 10th, 1935, the trustee has deducted and retained $268.15 *Page 305 
as commissions on items (a) and (c) and $901.79 on item (b), making a total of $1,169.94, or 3.1% of the moneys that have passed through its hands. In distributing the net cash proceeds of sale of $7,753.56, the trustee deducted $155.07, or 2%, without any investor opposing this deduction. Such deduction increased the trustee's commissions to $1,325.01, or less than 3% on total receipts income and principal already distributed amounting to $45,482.51. In addition to the aforesaid moneys, the trustee will receive and distribute $27,262.50 in principal upon approval by this court of the sale of the purchase-money mortgage for the full balance due thereon. The total moneys that will pass through the trustee's hands upon distribution of the money to be received upon assignment of the purchase-money mortgage will therefore be $72,745.01. Only one investor seeks to restrict the trustee to the commissions of $1,325.01 already deducted and retained on final receipts totaling $72,745.01, both income and principal. The trustee seeks an additional allowance of $545.25, which is 2% of the moneys remaining due on the purchase-money mortgage. If the compensation is limited to $1,325.01, it amounts to less than 2% of the moneys passing through the trustee's hands. Mere advertence to the standards of compensation fixed for trustees by the legislature, N.J.S.A. 3:11-2, as well as reference to the allowances made in such cases as Babbitt v.Fidelity Trust Co., 72 N.J. Eq. 745; 66 Atl. Rep. 1076; VanHouten v. Van Houten, 45 N.J. Eq. 796; 18 Atl. Rep. 842;Elfreth v. Allen, supra; Pomeroy v. Mills, 37 N.J. Eq. 578;Cf. In re Locarno Building and Loan Association, 127 N.J. Eq. 509,
reveal the shocking inadequacy of this trustee's compensation if it is to be limited to the compensation already deducted and retained. Its request for an allowance of 2% of all principal passing through its hands is extremely modest in view of the responsibilities it has assumed and the faithful manner in which it has discharged its trust. "It cannot be expected that responsible institutions will accept trusts of this nature and discharge them with fidelity unless reasonable compensation is made for their services," Elfreth v. Allen, supra. *Page 306