This suit concerns the disposition of surplus moneys remaining after the payment to shareholders of the Orion Building and Loan Association of 100 per cent. on the paid in value of their shares in the association. *Page 298 
The defendant, Orion Building and Loan Association, was organized in 1925. Its constitution provides for two classes of shares, namely, installment shares and paid up or income shares. Both classes of shareholders enjoy the same rights and privileges and occupy the same position as to debts and losses of the association. The only difference between the two classes of shareholders is their right to participate in the profits earned by the association.
The constitution of the association provides that holders of paid up or income shares shall be entitled to receive a fixed annual profit as determined by the board of directors from time to time. Dividends at the rate of six per cent. were paid to income shareholders until September 1st, 1932, when such dividends were reduced to five per cent. by the board of directors. On May 9th, 1933, the secretary of the association was instructed by the board of directors to notify the income shareholders that no dividends would be paid upon such shares, and none has been paid them since November 1st, 1932.
During the years 1931 to 1934 reserves against losses were set up by the association under various orders of the Commissioner of Banking and Insurance necessitating the recapture of all the profits theretofore apportioned to installment shareholders. Thereafter no profits were apportioned to the installment shareholders, and profits earned by the association were transferred to its reserve account.
In October, 1940, the defendant association sold the bulk of its assets to Carteret Savings and Loan Association pursuant toR.S. 17:12-115.
The terms of the sale were agreed upon by a majority of the directors of the association and approved by the shareholders at a meeting called for that purpose. At the same meeting the sale of other assets of the association was approved. As a result, all of the assets of the association were converted into money with the exception of one piece of property consisting of a vacant lot having little or no value.
A certificate in the form and manner as required by paragraph "j" of section 17:12-107 was filed by the association. *Page 299 
On November 1st, 1940, after discharging its liabilities, the association pursuant to section 17:12-115 distributed the consideration received from the Carteret Savings and Loan Association upon said bulk sale among its members pro rata, and in addition thereto distributed a liquidating dividend, the aggregate of both payments equaling the full paid in value of the shares held by members. It now has a surplus of $20,960.13.
This suit is brought by complainant, owner of five installment shares. Ruth M. Ellis and Celia Karpeles, owners of income shares, have upon petition and order been added as parties complainant.
The bill prays determination by the court of the rights of the parties in the surplus fund.
The income shareholders claim that because their contract with the defendant association provides an annual profit of six per cent. in lieu of all other profits of the association that they are entitled to the accrued profits for the years 1933 to 1940. The rights of the holders of prepaid or income shares are not those of creditors, but are essentially those of stockholders. The interest payable to them is not a fixed and absolute indebtedness, but is payable only out of the profits, if and when profits have been earned by the association and an adequate amount for the payment of dividends is available, and so declared by the directors, over and above such reserves as they are required to, or deem it advisable to, set up and maintain, out of the profits earned. National State Bank v. Victory Buildingand Loan Association, 120 N.J. Eq. 277; 184 Atl. Rep. 738.
It is stipulated that the fund of $20,960.13 is the balance remaining in the reserve fund after deducting all losses of the association. This reserve fund as already herein mentioned was set up pursuant to the several orders of the Commissioner of Banking and Insurance. Such orders had the same force and effect as law. Newark Twenty-one Building and Loan Association v.Zukerberg, 115 N.J. Eq. 579; 171 Atl. Rep. 804.
Order number four promulgated by the commissioner on November 8th, 1933, reads: *Page 300 
"* * * Section 1. Reserves to be set up in your Association * * * shall be created from the following sources and in the order set out below: * * *
"(c) From net profits of the current fiscal period.
 "(d) From profits previously apportioned. In setting up reserves from this source, the following method shall be used: The amount of reserves to be set aside from such apportioned profits as compared with the total amount of such apportioned profits shall be calculated on a percentage basis, and such percentage shall then be used in reducing the profits apportioned to the shares of each member. * * *
"(2) Losses sustained upon the sale of any real estate owned by your Association shall be charged to the reserves as established in the above mentioned order. Any portion of the reserves established from the source designated (d) above, remaining unused after all your real estate is sold, shall be returned or credited on an equitable basis to the members whose shares have been affected by setting up reserves from said source, or to their assigns or legal representatives, whether or not such shares so affected are still in force or have been subsequently lapsed, withdrawn or matured. Your Association is hereby authorized to issue participation certificates to the members whose shares have been affected by setting up reserves from the source designated (d) above, the form of such participation certificate to be first approved by this Department. Reserves established from earnings after the close of the present fiscal year shall not be subjected to any losses until the reserves heretofore established are first exhausted; such reserves if not used may likewise be made returnable to members whose shares were affected thereby. * * *"
Under section 1, paragraph (2) of the commissioner's order any portion of the reserves established under paragraph (d) remaining unused after the sale of all real estate shall be returned to the members whose shares were affected thereby. Likewise reserves established from earnings after the promulgation of said order if unused were to be returned to the members whose shares were affected thereby.
It also appears from the stipulation that the losses sustained upon the sale of real estate after the promulgation of said order exceeded the amount of reserves established from apportioned profits under paragraph (d) so that no part of such reserves are available to the affected members. However, the fund in question is the balance of the reserves established from earnings after the fiscal year 1933, which under the commissioner's order was to be returned to the members whose shares were affected thereby. In the instant case both classes *Page 301 
of shares were affected, in that neither class shared in the distribution of the association's earnings after 1933.
It would be inequitable to give this fund to the installment shareholders to the exclusion of the income shareholders. And it would likewise be inequitable to apportion to the income shareholders the full percentage of the profits which they contend are due them, before any payment to the installment shareholders.
The status of both classes is that of common shareholders (R.S. 17:12-47) without preference one over the other, and the fund will be distributed pro rata among both classes of shareholders. *Page 302