The Warranty Building and Loan Association Liquidating Corporation is in liquidation pursuant to the provisions of R.S.17:12-115, as amended. It was organized in 1910 as a normal building and loan association. In 1933 it met the same financial reverses as affected similar institutions. Shareholders withdrew their payments on account of dues, real estate was acquired as a result of foreclosures and it shortly became a "frozen" association. Legislation was enacted to save the state's entire building and loan structure. The history of that legislation, its constitutionality, interpretation and application, have been fully discussed in many cases. Bucsi v. Longworth Building andLoan Association, 119 N.J. Law 120; 194 Atl. Rep. 857; Rocker v.Cardinal Building and Loan Association, 119 N.J. Law 134;194 Atl. Rep. 865; Veix v. Sixth Ward Building and LoanAssociation, 60 Sup. Ct. Rep. 792; 84 L.Ed. 685.
A liquidating corporation, such as petitioner, is in the nature of a true trust, managed by a board of directors with the sole object of liquidating its assets into cash and distributing the same among its shareholders. In re Lawyers and Home-MakersBuilding and Loan Association, 128 N.J. Eq. 22; 15 Atl. Rep.
2d 137. This application by which petitioner seeks the instruction of this court was made pursuant to R.S.17:12-115.7, enacted December 27th, 1941, to enable liquidating corporations to obtain the instruction of this court "in any matters touching upon the liquidation and dissolution of the affairs of such corporation * * *."
In order to enable the Commissioner of Banking and Insurance more effectively to conserve the assets of the building *Page 416 
and loan associations of this state, the legislature has endowed him with the power to make orders affecting such assets which have the force and effect of law. R.S. App. A:7-3. The validity and legal effect of these orders have already been considered and approved by this court. Newark Twenty-One Building and LoanAssociation v. Zukerberg, 115 N.J. Eq. 579; 171 Atl. Rep. 804;Schwarz v. Orion Building and Loan Association, 129 N.J. Eq. 297; 19 Atl. Rep. 2d 443. As part of the authority granted to the Commissioner by this statute, he was empowered to issue orders "(e) to regulate, allocate, prohibit or postpone the receipt and/or disbursement of funds by any such associations;".
Pursuant thereto, the Commissioner promulgated Order No. One-A which became effective on March 14th, 1933, and which provided, among other things:
"2. (a) Dues and/or premiums received by your Association from members either on pledged or unpledged shares shall be segregated from all other receipts and held in a separate trust account for the benefit of such members. Such funds so held in trust shall not be disbursed or credited to the share accounts until the further order of the Commissioner of Banking and Insurance."
Shortly thereafter the Commissioner promulgated Order No. Three-A which became effective on May 23d 1933, and which provided, among other things:
"1. (4) If your Association has established the reserves required by this Department, your Association may then release to the general funds of the Association the dues and premium receipts which have been held in a separate trust account under the provision of Section 2(a) of Order Number One-A; and may credit to the respective shareholders accounts entitled thereto, such payments of dues and premiums so held in such separate trust account."
In 1933 the petitioner was unable to establish the reserves required by the Department of Banking and Insurance in order to bring it within Order No. Three-A. Accordingly, petitioner complied with Order No. One-A and segregated all share dues thereafter collected and held them in a separate "trust account" for the benefit of its members making such payments, and subject "to the further order of the Commissioner *Page 417 
of Banking and Insurance." Respondent Bloch made such payments of share dues during the years 1933, 1937, 1938 and 1939, totaling $2,800; 150 other shareholders made similar payments totaling $17,040.03. Petitioner has upwards of 3,000 shareholders who made no such payments and who are here termed "general" shareholders.
By August 1st, 1934, adequate reserves had been established by the Warranty to bring it within the terms of Order No. Three-A. Accordingly, it released to the general funds of the Association all dues which had been held in the separate "trust account."
On July 24th, 1939, the shareholders voted in favor of liquidating the Association. At that meeting shareholders who had made payments under Order No. One-A asserted that they were entitled to a priority to the extent of those payments. Petitioner promptly segregated in a separate bank account a portion of its assets equal in amount to the dues so paid in until the problem could be judicially determined. This fund has been reduced from time to time by liquidating dividends aggregating 27 1/2%, or $4,686.01, leaving in this special account at the present time the sum of $12,354.02 as the subject-matter of this controversy.
The petitioner filed its petition setting forth the history of the controversy relating to this fund and its doubt as to its proper payment. Answers and amendments thereto admitting the material facts of the petition were filed by respondent Bloch, representing the shareholders of the Association who claim to own the funds which are the subject-matter of this dispute as "trust dues" paid into the Association, and by respondents Dimond and Krimke, representing the shareholders of the Association who assert that the funds are a part of the general assets of the Association.
Respondent Bloch, representing the shareholders who made the payments under Order No. One-A and who assert a priority to the extent of those payments, contends that: (a) pursuant to the provisions of Order No. One-A the Warranty created a true trust in favor of such shareholders; (b) that the Commissioner had no authority to alter this trust relationship by Order No. Three-A; (c) that the Association had *Page 418 
no power to alter, revoke, modify or in any way affect this trust relationship or to transfer the trust dues to the general funds; and (d) that the trust is therefore in full force and effect and gives these shareholders a priority over the general shareholders.
Respondents Dimond and Krimke, representing the general shareholders, contend that petitioner in all respects proceeded in accordance with the orders of the Commissioner, which have the force and effect of law, and that pursuant to Order No. Three-A the so-called "trust dues" became part of the general funds of the Association when released by the Association to the general funds.
By the terms of Order No. One-A, the Commissioner directed all associations in the position of petitioner to segregate dues thereafter collected. The trust relationship which petitioner brought into existence under this order was neither irrevocable nor permanent in duration. By the very words of Order No. One-A the term of the trust was limited "until the further order of the Commissioner of Banking and Insurance." That "further order" was Order No. Three-A which became applicable to this Association as soon as it complied with the necessary requirements and established the necessary reserves. Immediately upon doing so the Association had the right, under Order No. Three-A, to "release to the general funds of the Association the dues and premium receipts which had been held in a separate trust account under the provisions of section 2(a) of Order No. One-A."
The purpose of the Commissioner of Banking and Insurance in ordering the segregation of the funds and the separate trust account was fully accomplished when the necessary reserves had been set up. The duration of a trust is dependent upon and determined by its purpose. Zelley v. Zelley, 101 N.J. Eq. 37;136 Atl. Rep. 738; 3 Scott on Trusts § 334. The trust having terminated, petitioner acted properly and in accordance with its duty to its shareholders when it transferred the "trust" dues to the Association's general fund.
The duration of the trust was limited by the very terms of the order pursuant to which it was created. 3 Scott on Trusts 1823
§ 334. It was to continue "until the further order of *Page 419 
the Commissioner of Banking and Insurance." Although the period thus remained indefinite, the Commissioner reserved the power to alter, modify or revoke. Declarations of trust to be held "until the further order" or "until otherwise directed" are always subject to the power which is thus reserved. Lambdin v.Dantzebecker, 169 Md. 240; 181 Atl. Rep. 353; Trenton BankingCo. v. Howard, 187 Atl. Rep. 569; affirmed, 121 N.J. Eq. 85;187 Atl. Rep. 575.
By Order No. Three-A the Commissioner of Banking and Insurance exercised the reservation which he had made and upon the establishment of the necessary reserves by petitioner the revocation of the trust became complete. Respondent Bloch and the other shareholders who made subsequent payment of dues did so with notice that the disposition of such payments was subject to the "further order of the Commissioner." The petitioner's action in transferring the separate trust account into the general fund of the Association was in accordance with the legal rights of all shareholders.
The Association is therefore instructed that so-called "trust" shareholders are to be classed with the general shareholders of the Association and are to receive their liquidating dividendspro rata as and when they are declared.
An order may be entered in accordance with this opinion.